UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
LEONARD WILSON, *pro se*,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Petitioner,　　　　　　　　　　　:　　　　　　**OPINION AND ORDER**
　　　　　　　　　　　　　　　　　　　　　　　　　:　　　　　　06-CV-553 (DLI)
　　　　　　　-against-　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
SUPERINTENDENT ERCOLE,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Respondent.　　　　　　　　　　:
-------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

*Pro se p*etitioner Leonard Wilson, is currently serving a sentence of twenty-five years to life following his conviction in New York State Supreme Court, Richmond County, for second degree murder, New York Penal Law § 125.25[3], second degree manslaughter, New York Penal Law § 125.15[1], two counts of first degree attempted robbery, New York Penal Law § 110/160.15[1] and [2], and second degree attempted robbery, New York Penal Law § 110/160[1]. Pursuant to 28 U.S.C. § 2254, he challenges his conviction by contending that: (1) a juror violated his Sixth and Fourteenth Amendment right to a fair trial and impartial jury by reading a newspaper article about the case; (2) the trial court violated his Sixth and Fourteenth Amendment right to a fair trial when it failed to give curative instructions to the entire jury after the jurors observed him in restraints as he was being transported to the court; (3) he received ineffective assistance of counsel; (4) the prosecution failed to prove his guilt beyond a reasonable doubt and his conviction was against the weight of the evidence; and (5) his sentence of twenty-five years to life is excessive. For the reasons set forth below, the petition is denied.

1

I. **Summary of the Facts**

   a. **Background**

On May 26, 1999, at approximately 6:15 P.M., petitioner approached Keith DeGroot in the courtyard of a public housing complex at 77 Hill Street, Staten Island. (Trial Transcript ("Tr.") at 169-170, 187, 195, 197, 251-57.) Petitioner pointed a shotgun at DeGroot's side, grabbed DeGroot by the neck, and told him to empty his pockets. (Tr. at 173, 201-202, 205, 219-224, 238, 239, 256-257, 282-285, 299.) While petitioner held DeGroot, Ivan Copeland, petitioner's friend, approached the two and searched DeGroot's pockets. (Tr. at 175, 197, 214, 217, 239, 263, 265, 301-302.) There was no trial testimony showing that petitioner communicated with Copeland during the confrontation. As DeGroot tried to remove petitioner's hand from his neck, the shotgun fired, striking DeGroot in the abdomen. (Tr. at 175, 176, 223.) Petitioner fled with the shotgun into a nearby building, and Copeland fled elsewhere. (Tr. at 176-177.) DeGroot died at St. Vincent's Hospital from the shotgun wound. (Tr. at 433.) The police arrested petitioner on November 5, 1999, after he had been a fugitive for more than five months. Petitioner was indicted on two counts of murder in the second degree, three counts of attempted robbery in the first degree, and one count for attempted robbery in the second degree. (Respondent's Exhibits ("RE") at 1-3.)

Petitioner testified at trial and admitted that he had confronted DeGroot with a shotgun and asked him to empty his pockets, but claimed that he did so in order to expose DeGroot to the community as a drug dealer. According to petitioner, he had seen DeGroot selling drugs on the basketball court of the housing complex before the shooting. (Tr. at 465, 505-06, 534-37.) Upset by this, he confronted DeGroot about the drugs and asked him to stop dealing drugs in the neighborhood. (Tr. at 466, 473.) DeGroot refused, and allegedly told petitioner to "pack [his] shit

and bounce," which petitioner understood to mean that DeGroot was ordering him to move out of the neighborhood. (Tr. at 466.) Petitioner claimed that the shotgun went off accidentally when DeGroot grabbed the shotgun and tried to take it. (Tr. at 467-68, 515-17, 540, 553.) Petitioner testified that he did not intend to rob DeGroot of property or drugs, nor did he intend to shoot, hurt, or kill DeGroot. (Tr. at 467, 515-16, 555, 560-62.)

### b. Relevant Facts at Trial

#### i. The Alleged Juror Misconduct

On the first day of the trial, Wilson's attorney approached the trial judge to discuss an article about the case that a local newspaper had published over the weekend. (Tr. at 2.) He requested that the trial judge ask whether any of the jurors had read that article. (*Id.*) The judge asked the question, and one juror admitted to having read the article. (Tr. at 6.) The judge summoned that juror to the sidebar and asked him what he remembered about the article. (Tr. at 7.) The juror recalled that the article said that petitioner was "on the lam for six months, picked up for something in South Carolina. Another person involved in it." (*Id.*) The court then asked the juror why he had read the article, and he replied that he happened to come across the article while reading the local news. (*Id.*) Defense counsel asked the juror if he could be fair, and the juror answered that he could. (Tr. at 8.) Defense counsel repeated the question, asking the juror if he was "sure" he could be fair, and the juror replied "no problem." (*Id.*) Based on these answers, defense counsel consented to the juror remaining on the jury. The court instructed the juror not to discuss anything he read about the case with any of the other jurors. (Tr. at 11.)

#### ii. Alleged Juror Prejudice from Seeing Petitioner in Shackles

On the first day of trial, defense counsel informed the judge that petitioner believed several jurors had seen him in shackles as he was stepping out of the Department of Corrections vehicle in front of the courthouse. (Tr. at 3.) Concerned about possible juror prejudice, defense counsel requested that the court inquire whether any of the jurors had seen petitioner prior to the trial, and the court did. (Tr. 2-3.) In response, three jurors raised their hands. (Tr. at 8.) The trial judge and defense counsel separately asked each of these jurors what they had seen and how it might affect them as jurors. (Tr. 8-11.) The jurors assured the court that seeing petitioner in restraints as he was stepping out of the bus would not impact their deliberations. (*Id.*) The court then instructed each of the jurors not to discuss what they had seen. (*Id.*) In light of their responses and the judge's instructions, defense counsel had no objections to these three jurors remaining on the jury. (Tr. at 11.)

### iii. Motion to Dismiss for Lack of Legally Sufficient Evidence

At the end of the prosecution's case, defense counsel moved to dismiss, claiming that the government had failed to establish a *prima facie* case by legally sufficient evidence as to each count of the indictment. (Tr. at 451.) The court denied the motion. (*Id.*)

### iv. Verdict and Sentence

On September 6, 2001, the jury acquitted petitioner of intentional second degree murder and first degree manslaughter, but convicted him of felony second degree murder, second degree manslaughter, two counts of attempted first degree robbery, and attempted second degree robbery. At sentencing, the court determined petitioner to be a second violent felony offender for his 1993 conviction of attempted robbery in the first degree. The court sentenced petitioner to twenty-five

4

years to life imprisonment on the murder count, seven-and-a-half to fifteen years for the second degree manslaughter, ten years for each count of attempted first degree robbery, and six years for attempted robbery in the second degree. The court ruled that the sentences were to run concurrently.

### c. Procedural History

Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department. He raised largely the same arguments as those in his current petition. First, he contended that the court's decision to retain a juror who had read a newspaper article concerning the case violated his right to an impartial jury and fair trial. Second, he claimed that the court committed reversible error by failing to give curative instructions after three jurors saw him in shackles on the first morning of trial. Third, petitioner argued that his counsel rendered ineffective assistance by: (1) failing to object to the court's decision to retain the juror who had read the newspaper article; (2) failing to object to the court's decision to retain the three jurors who had viewed him in shackles; (3) failing to object to the indictment which exposed him to a repugnant verdict; and (4) failing to object during the prosecution's opening statement when it referred to petitioner as "Shaw." Fourth, petitioner argued that the prosecution failed to prove petitioner's guilt beyond a reasonable doubt and his conviction was against the weight of the evidence. Finally, petitioner urged the court to reduce his sentence under C.P.L. § 470.15[6][b].

The Appellate Division affirmed the conviction. *People v. Wilson*, 10 A.D.3d 460 (2d Dep't 2004). The Appellate Division found that petitioner's arguments that the government failed to prove its case beyond a reasonable doubt and the conviction was against the weight of the evidence were "unpreserved for appellate review." *Id.* at 461. The court further noted that "in any event," when the evidence was viewed in the light most favorable to the prosecution, "it was legally sufficient to

establish the defendant's guilt beyond a reasonable doubt." *Id.* After reviewing the facts, the court was "satisfied that the verdict of guilt[y] was not against the weight of the evidence." *Id.* The Appellate Division also held that petitioner's sentence was not excessive. *Id.* On all of the other claims, the Appellate Division held that petitioner's contentions were "either unpreserved for appellate review or without merit." *Id.* at 461.

Petitioner applied to the New York State Court of Appeals ("Court of Appeals") for leave to appeal. In this application, he did not raise the excessive sentence claim, but repeated the other arguments presented to the Appellate Division. The Court of Appeals denied petitioner's application on October 27, 2004. Petitioner has not filed for a writ of certiorari with the United States Supreme Court. He timely filed this petition on January 30, 2006.

## II. Discussion

### a. Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions when the state courts have adjudicated a petitioner's federal claims on the merits. Under the AEDPA standard, which governs the review of petitions challenging state convictions entered after 1996, federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court

decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable determination" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"A district court must dismiss any petition for habeas corpus, brought pursuant to 28 U.S.C. § 2254, that contains issues not exhausted in the state courts." *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002). When a petitioner presents the district court with a "mixed petition," including both exhausted and unexhausted issues, the court can offer the petitioner "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only the exhausted claims." *McKethan*, 292 F.3d at 122 (citation omitted). "Alternatively, a district court may also dismiss the petition with a judgment on the merits." *Id*. (citation omitted); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

> State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower

7

> courts) about both the factual and legal bases for the federal claim. Moreover, even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law.

*McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002) (citations and internal quotation marks omitted).

District courts cannot review a state prisoner's federal claims that are barred by an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a state court's holding contains a plain statement that a claim is procedurally barred based on a state rule, the federal court may not review it even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n.10 (1989); *accord Fama v. Comm. of Corr. Servs.*, 235 F.3d 804, 811 n.4 (2d Cir. 2000) ("[W]e have held that where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved."). On the other hand, if the state court holds that a claim is either unpreserved for appellate review or without merit, the claim is deemed preserved and therefore subject to habeas review. *Fama*, 235 F.3d at 810-811.

Because petitioner is proceeding *pro se*, the court holds his pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court will interpret the petition "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

### b. Juror Misconduct

Petitioner's first claim for federal habeas relief states that he was denied a fair trial by an impartial jury when a juror, in violation of the judge's instructions, read a newspaper article regarding the case. On appeal, the Appellate Division found this claim to be "either unpreserved for appellate review or without merit." *Wilson*, 10 A.D.3d at 461. Because the Appellate Division rejected the claim on these "either/or" grounds, the validity of the claim is subject to federal habeas review. *Fama*, 235 F.3d at 810-811. As such, the court must decide whether the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

On habeas review, the question of a juror's impartiality "is plainly one of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (citation omitted). The trial court's findings on such questions are presumed correct and are entitled special deference given that the "determination is essentially one of credibility, and therefore largely one of demeanor." *Id.* at 1037-38. Thus, the task for this court is to determine whether there is fair support in the record for the state court's conclusion that the juror would be impartial despite having read the newspaper article. *Id.* at 1038. The court finds that there is such support.

After finding that a juror had read a newspaper article about the case, the court proceeded to examine that juror to ascertain his impartiality. (Tr. at 7-8.) The juror did not remember much about the article except that the "[g]uy was on the lam for six months, picked up for something in South Carolina. Another person involved in it." (Tr. at 7.) The juror then assured the court that nothing he had read would impair his ability to "approach this case fairly and objectively." (Tr. at 8.) This

9

unambiguous assurance satisfied both the court and Wilson's attorney. (*Id.*) Under these circumstances, the court finds no reason to disturb the trial court's finding of impartiality. Furthermore, the only potentially relevant fact from the article that the juror remembered was that petitioner had been "on the lam for six months." Petitioner himself testified to this fact at trial. As such, even if the court found that there was error arising from the juror's exposure to the newspaper article, it would be harmless error. *See Taus v. Senkowski*, 134 Fed. Appx. 468, 470 (2d Cir. 2005).

### c. Juror Prejudice

Petitioner, on direct appeal, complained that "[p]rior to the day of trial proceedings," three jurors viewed him in shackles as he was entering the courthouse "on more then [sic] one occasion." (RE at 64.) According to petitioner, "[t]hat indiscretion, combined with the trial courts [sic] failure to give a cautionary instruction to the jury, not only constitutes reversible error, but deprived appellant his right to a fair trial." (*Id.*) Because the Appellant Division held that the claim was "either unpreserved for appellate review or without merit," *Wilson*, 10 A.D.3d at 461, the court may review it now. *Fama*, 235 F.3d at 810-811. Petitioner cannot prevail on this claim.

"Numerous cases support the proposition that an inadvertent view by jurors of defendants in handcuffs, without more, is not inherently prejudicial as to require a mistrial." *United States v. Taylor*, 562 F.2d 1345, 1359 (2d Cir. 1977), *cert. denied*, 432 U.S. 909 (1977). Furthermore, a court can sufficiently minimize the prejudice from jurors viewing a defendant in restraints by conducting a sufficient *voir dire*. *United States v. Torres*, 519 F.2d 723, 727-28 (2d Cir. 1975), *cert. denied*, 423 U.S. 1019 (1975). In *Torres*, one juror and three alternates saw the defendants in handcuffs. *Id.* at 727. After *voir dire*, the district court dismissed the juror who said that the view may impact her judgment but retained the two who said that the view would not influence their judgment. *Id.* Given

those circumstances, the Second Circuit held that "[i]n light of these statements, we cannot say that there was either a deprivation of constitutional rights or a degree of unfairness sufficient to invoke reversal under our supervisory powers." *Id*. at 728.

In this instance, the trial court properly handled the matter in accordance with *Torres*. Upon learning that some of the jurors may have seen petitioner in shackles, the court immediately questioned the jury. Rather than asking the jury if anyone had seen petitioner in restraints, which would have drawn undue attention to that fact, the court asked, "[d]id any of you see the defendant this morning prior to viewing him in court just now?" (Tr. at 8.) Once the court identified three such jurors, the court and defense counsel questioned each of them about what they had seen and how it would impact their impartiality, if at all. (Tr. at 8-11.) The first juror indicated that seeing petitioner in restraints would not affect her judgment at all because she believed "that's standard when someone is being incarcerated to travel that way." (Tr. at 9.) The second juror indicated that seeing petitioner in shackles "absolutely" did not prejudice him against petitioner. (Tr. at 10.) The third juror stated that he would "throw [seeing petitioner in shackles] out of his mind and keep an open mind." (Tr. at 11.) The court instructed all three jurors that viewing petitioner in shackles should have no role in their deliberations and they should not discuss what they saw. (Tr. at 9-11.) Based on these answers and instructions, Wilson's attorney was satisfied that the three jurors can remain impartial, and thus had no objection to retaining them. These circumstances do not warrant habeas relief.

Petitioner, however, has expanded on this claim before this court, arguing, for the first time, that the "entire jury panel at one time or another" viewed him being transported in shackles. (Pet. at 7.) Before addressing this claim, the court must determine if it is exhausted. Given that petitioner

11

never presented this expanded claim to the state courts, the claim can only be exhausted if it is clear that the state court would hold that it is procedurally barred. *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002). Exhaustion in this sense, however, does not automatically make the claim proper for federal habeas review. The court may only review such a claim if the prisoner can demonstrate cause and prejudice for the default, or if he can demonstrate that failure to review will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

This expanded claim is procedurally barred under New York law. "New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record." *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (citing McKinney's CPL § 440.10(2)(c)). The expanded claim petitioner now exerts was reviewable from the record; however, petitioner unjustifiably did not raise it on direct appeal. The record shows that the judge inquired of the *entire* petit jury whether *any* of the jurors had seen the defendant that day. Only three jurors said they had. They were questioned separately and then allowed to remain on they jury once the court determined that the jurors could put that fact out of their minds and on the consent of defense counsel. At no time did either defendant or his attorney complain that other jurors had seen the defendant in restraints. Had there been other jurors who had seen petitioner in restraints, he could have raised the issue on appeal and complained of his counsel's and the court's alleged failure to address the matter.

Petitioner offers no reasons, and the court finds none, to explain why he did not raise this claim on direct appeal. Indeed, petitioner's failure to raise this matter before the trial court is also unjustifiable, and raises questions as to the veracity of these newly expanded allegations that the

entire jury viewed him in restraints. The record shows that both petitioner's attorney and the court were extremely responsive to any concerns relating to this matter. In light of the diligence that both the defense attorney and the court devoted to this matter the first time petitioner raised it, petitioner's failure to raise any further concerns about additional jurors who might have seen him in restraints is not only unjustifiable, but also implausible. Accordingly, petitioner's expanded claim is procedurally barred under New York law.

Petitioner may nonetheless avoid this procedural bar by showing cause for the default and prejudice, or that failure to consider the claim will result in a miscarriage of justice, *i.e.*, the petitioner is actually innocent. Petitioner does not argue that he had reason for the default, nor does the court see any basis in the record for such an argument. Therefore, petitioner can only avoid the consequences of his procedural default if he can show that he is actually innocent, which he cannot.

The fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995). "Actual innocence means factual innocence, not mere legal sufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted). "To establish actual innocence, [a] petitioner must demonstrate that, in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id*. (citation and internal quotation marks omitted). In other words, is it "more likely than not that no reasonable juror would have concluded that [the petitioner] engaged in conduct that meets the required elements of each of the charges." *Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003). Petitioner cannot make this showing. Here, the undisputed evidence shows that while holding a shotgun to DeGroot, petitioner told DeGroot to empty his pockets. Two eyewitnesses testified that petitioner's friend and co-defendant at the trial, Ivan Copeland, patted

13

down DeGroot's pockets during the confrontation. The court agrees with the Appellate Division that under these circumstances, a jury has sufficient evidence to conclude that petitioner acted with larcenous intent. *See People v. Wilson*, 10 A.D.3d 460 (2d Dep't 2004). Therefore, petitioner cannot overcome his procedural default by showing that the court's failure to consider his claim will result in a fundamental miscarriage of justice.

### d. Ineffective Assistance of Trial Counsel

Petitioner contends that his trial counsel rendered ineffective assistance by failing "to object to clear violations of [his] rights." (Pet. at 9.) Specifically, petitioner faults his attorney for not seeking to remove the juror who had read the previously discussed newspaper article about the case. Additionally, he complains of his attorney's failure to challenge the indictment as duplicitous, thereby "exposing [him] to numerous opportunities to be found guilty of the charge of murder 2." (Pet. at 9.)

*Strickland v. Washington* sets forth the standard for ineffective assistance of counsel. 466 U.S. 668, 687 (1984). To prevail under *Strickland*, a petitioner must show that his counsel's representation "fell below an objective standard of reasonableness" and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687. Counsel is "strongly presumed" to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689. The *Strickland* court defined a "reasonable probability" as a "probability sufficient to undermine confidence in the outcome." *Id.* at 694. This court must "determine whether, in light of all circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.

In light of the court's prior finding that the trial court did nor err in retaining the juror who read the newspaper article, defense counsel would have had no basis to object. Defense counsel brought the matter to the court's attention in the first instance, requested that an inquiry be made, and participated in the inquiry. Therefore, this claim for ineffective assistance of counsel fails.

Turning to the duplicitous-indictment claim, although petitioner did not raise this claim in his state appeals, it is nonetheless deemed exhausted since a New York court would, under CPL § 440.10(2)(c), hold that it is procedurally barred. Petitioner cannot overcome this procedural default. Petitioner has not argued that there was cause for the default, and the court finds none on the record. Additionally, as already explained, failure to review this claim will not result in a fundamental miscarriage of justice. Moreover, petitioner would not prevail even if the court was to review the claim because petitioner has not shown that the indictment joined two or more distinct crimes in a single count. *See United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006) (citations omitted). Therefore, counsel would not have had a basis to object to the indictment as duplicitous. In sum, petitioner has not raised any viable claims for ineffective assistance of counsel.

   e. **Guilt beyond a Reasonable Doubt and Verdict against the Weight of the Evidence**

Petitioner claims that his conviction violates his due-process rights because the prosecution failed to prove his guilt beyond a reasonable doubt. The Appellate Division held that this claim is "unpreserved for appellate review" because the defense counsel failed to contemporaneously object with specificity. *Wilson*, 10 A.D.3d at 461 citing N.Y. Criminal Procedure Law § 470.05(2). The Appellate Division also found that "in any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a

15

reasonable doubt." *Wilson*, 10 A.D.3d at 461 (citation omitted). Respondent argues that the Appellate Division's reliance on a state procedural rule is an independent and adequate basis for denying this claim. The court agrees.

Federal courts look to federal law to determine whether a state procedural rule is an independent and adequate bar to reviewing a federal question. *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007). It is well-settled that the Appellate Division's holding that petitioner's claim was unpreserved for appellate review constitutes an "independent" ground of decision even though the court also discussed the merits of the underlying claim. *See, e.g.*, *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) ("There is no question that the Appellate Division's explicit invocation of the procedural bar constitutes an 'independent' state ground, even though the court spoke to the merits of [the] claim in an alternative holding.") (citing *Harris*, 489 U.S. at 263, 264 n.10). An independent state law ground is "only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state"; however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'" *Garvey*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)).

The Second Circuit has found that New York's contemporaneous objection rule is firmly established and regularly followed by the New York courts. *Garcia*, 188 F.3d at 78-79. Therefore, whether petitioner's claim is procedurally barred by Section 470.05(2) turns on whether it would be exorbitant to apply the rule in this particular case. *Garvey*, 485 F.3d at 713-14. In *Lee v. Kemna*, the Supreme Court set forth several guideposts to determine whether the application of a firmly established and regularly followed state procedural rule would be exorbitant:

16

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision;
> (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and
> (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate government interest.

*Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (quoting *Lee*, 534 U.S. at 381-85).

First, with respect to whether the violation was relied upon by the trial court, as the court noted in *Cotto* "the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court." *Id.* at 242. Thus, it is impossible to say whether or not the trial court relied on the contemporaneous-objection rule in making its decision. Similarly, it is highly speculative to say that if petitioner's counsel contemporaneously objected with specificity, the trial court would have ruled differently. *See Cotto,* 331 F.3d at 244. Had petitioner, however, raised this issue at the trial level, which he failed to do, the court at least would have been able to address it. *See Garvey*, 485 F.3d at 719 (finding that the first factor weights in favor of allowing the procedural bar where the failure to contemporaneously object did not give the trial court the opportunity to address the issue).

Regarding the second and third *Lee* factors, the court must consider whether New York's contemporaneous objection rule is firmly established and regularly followed in the particular circumstances of petitioner's case, and whether petitioner "substantially complied" with that rule given the realities of trial. *See Lee*, 534 U.S. at 382; *Cotto*, 331 F.3d at 244. It is well established that New York courts will not review unpreserved claims. *See Garcia*, 188 F.3d at 82. Further, when a defendant makes no objection to the court's ruling, the defendant cannot be said to have

substantially complied with section 470.05(2). *Cf. Garvey*, 485 F.3d at 714 (collecting cases). Accordingly, the *Lee* factors do not show that the Appellate Division's application of the preservation rule was exorbitant. *See Richardson v. Greene*, 497 F.3d 212, 220 (2d Cir. 2007) ("Where the case law interpreting New York's preservation rule in criminal proceedings displays consistent application in a context similar to the one before us, that rule is firmly established, regularly followed, and hence adequate for purposes of the independent and adequate state ground doctrine."). The court holds that New York's preservation rule constitutes an adequate ground of decision independent of petitioner's federal claim.

Even when habeas claims are barred by an adequate and independent state law ground, a federal court can consider the claim despite the procedural bar if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The only cause for the default here was petitioner's trial counsel's failure to object. Default resulting from such failure is not, however, considered "cause" for a default. *See id.* at 753. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Amadeo v. Zant*, 486 U.S. 214, 222 (1988) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). Petitioner has not alleged any external objective factor that caused the default. Petitioner cannot show that the court's failure to review this claim would result in a fundamental miscarriage of justice because, as discussed above, petitioner cannot establish actual innocence. Accordingly, petitioner is procedurally barred from federal review of this claim as the Appellate Division's decision rests upon an adequate and independent state-law ground.

Petitioner's argument that the verdict was against the weight of the evidence is groundless. This is purely a state law claim grounded in New York Criminal Procedure Rule § 470.15[5], and thus is not cognizable under federal habeas review. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001).

### f. Excessive Sentence

On his direct appeal, petitioner claimed that his sentence of twenty-five years to life imprisonment is excessive in light of his youth and expression of remorse for his negligent conduct. Petitioner did not contend that this sentence violated his constitutional rights, but instead urged the Appellate Division to reduce the sentence under C.P.L. § 470.15(6)(b), which gives the state court broad plenary power to modify a sentence that is unduly harsh or severe, though legal. (RE at 26-27.) The Appellate Division declined, stating that the "sentence imposed was not excessive." *People v. Wilson*, 10 A.D.3d 460, 461 (2d Dep't 2004). Petitioner now re-asserts this identical claim. Given that this claim rests exclusively on state law, the court may not review it under 28 U.S.C. § 2254(d).

Additionally, an excessive sentence claim does not provide a basis for habeas relief where, as here, the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citation omitted). The sentence of twenty-five years to life imprisonment is within the statutory range for felony murder under New York law, particularly since the trial court found defendant to be a second violent felony offender. *See Valentine v. Lord*, 03-CV-4834, 2006 WL 1997708, at *4 (S.D.N.Y. July 18, 2006) ("[T]he statutory minimum for felony murder in New York is 15 years and the statutory maximum is life imprisonment.") (citations omitted); *Whitlatch v. Senkowski*, 344 F. Supp. 2d 898, 906 (W.D.N.Y. 2004) ("Although Whitlatch's sentence of twenty-

five years to life represents the maximum sentence allowable for the crime of felony murder, it nevertheless is within the permissible statutory range for such a conviction."); *People v. Curry*, 294 A.D.2d 608, 612 (3d Dep't 2002) (imprisonment of twenty-five years to life for a felony murder conviction was within statutory range).

### III. Conclusion

For the reasons set forth above, Wilson's petition for a writ of habeas corpus is denied. Petitioner is further denied a certificate of appealability as petitioner failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. §1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

DATED: Brooklyn, New York
March 23, 2009

_____/s/_____
DORA L. IRIZARRY
United States District Judge